## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| ANTHONY ROBINSON,<br><br>    *Plaintiff,*<br><br>  v.<br><br>LOUDON COUNTY PUBLIC SCHOOLS,<br><br>    *Defendant.* | Civil Action No. 1:16-cv-1604<br>Hon. Liam O'Grady<br>Hon. Theresa Buchanan |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Loudon County Public School's Motion to Dismiss the Amended Complaint. (Dkt. No. 16). This dispute arises out of allegations that Defendant discriminated against Plaintiff on the basis of race and retaliated against Plaintiff for engaging in protected conduct. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.

### I. BACKGROUND

Plaintiff, Anthony Robinson, is an African-American male and former head custodian at Sully Elementary School in Sterling, Virginia. Plaintiff was supervised in that role by Assistant Principal Mark Hayden and Principal Colleen O'Neill. Both supervisors are Caucasian. Plaintiff alleges that he has had disputes with Vice Principal Hayden on at least three occasions during his employment. First, on August 27 and 28, 2014, Plaintiff avers that he received verbal permission from Vice Principal Hayden to modify his schedule. Plaintiff worked from noon to 8 p.m. though his regular shift was from 2 p.m. to 10 p.m. Nevertheless, Vice Principal Hayden verbally reprimanded Plaintiff for leaving the school before 10 p.m. Second and around the

same time period, Vice Principal Hayden informed Plaintiff that he had received a tip from a teacher at Sully Elementary, Jordan Ricks, that Plaintiff had left the school in the middle of the day and returned smelling of marijuana. Ricks is a Caucasian male. Vice Principal Hayden suggested to Plaintiff that an employee assistance program which included drug treatment was available to him. Upon hearing these comments from Vice Principal Hayden, Plaintiff promptly obtained a drug test and provided the negative results to Vice Principal Hayden. Vice Principal Hayden implied to Plaintiff that he still believed Ricks. Third, on or around November 7, 2014, Vice Principal Hayden gave Plaintiff a letter of reprimand for taking off work on three consecutive Fridays, October 3, 10, and 17, 2014. Plaintiff provided his timecard to Vice Principal Hayden showing that Plaintiff had been at work on all three Fridays in question. Plaintiff attached a copy of the time card. Dkt. No. 15-2. Vice Principal Hayden did not rescind the letter of reprimand. Plaintiff avers that there are other examples of the administration subjecting him to false accusations and improper reprimands motivated by racial animus.

In addition to these three disputes with Vice Principal Hayden, Plaintiff identifies one further instance in which he suffered discrimination. From September 2014 to March 2015, a poster was displayed in Sully Elementary School's teacher lounge. The poster displayed a Hershey "kiss" candy accompanied by the following quotation:

Fun Fact #525

"Nigglywiggly" is the actual name of the little paper flag thingy sticking out of the top of Hershey's kisses!

wtf-fun-facts.tumblr

Dkt. No. 1, Exh. C.

In the middle of March 2015, the poster was removed. Approximately one week after the poster was removed Plaintiff sent a letter to Principal O'Neill thanking her for removing the

poster and expressing his concerns about its content. Plaintiff explained in the letter that he found the term "nigglywiggly" racially insensitive upon belief that it is a slang term for African-American genitalia and is otherwise associated with a derogatory term for African Americans. Plaintiff recommended in the letter that all employees of Loudon County Public Schools receive diversity training. When Plaintiff did not receive a response to the letter from Principal O'Neill he sent copies to Superintendent Eric Williams, Assistant Superintendent Terri Breeden, and Director of Elementary Schools Dr. W. Michael Martin. Plaintiff received a response from Dr. Martin who expressed unfamiliarity with the term and said he would look into the issue. A copy of the letter was not attached to the Complaint or the Amended Complaint.

On May 1, 2015, Principal O'Neill sent Plaintiff a letter informing him that he was being "non-appointed" for the following school year because he received a "Does Not Meet Job Requirements" overall performance rating on his 2014-2015 employee evaluations. Plaintiff avers that Sully Elementary guidelines required the Defendant to notify the Plaintiff in writing by March 27, 2015 if he received a "Does Not Meet Job Requirements" rating. The guidelines further require Defendant to provide Plaintiff specific reasons for the negative evaluation along with the opportunity to speak to his evaluator about corrective actions. None of these policies were complied with for Plaintiff's 2014-2015 employee evaluation.

Plaintiff filed a grievance with Principal O'Neill based on the failure to comply with the evaluation procedures. On or about August 11, 2015, the School Board ruled against Plaintiff and denied the grievance.

Plaintiff, through counsel, filed a two-count Complaint on December 28, 2016. Dkt. No. 1. Count I alleged "Race Discrimination Creating an Unlawful Hostile Work Environment" and Count II alleged "Retaliatory Discharge." Dkt. No. 1, at 5, ¶¶ 28-29. Defendant moved the

3

Court to dismiss the Complaint for failure to state a claim on both counts. Dkt. No. 7. The Court

held a hearing in the matter on May 19, 2017. Dkt. No. 13. At the close of the hearing, the

Court dismissed the Complaint without prejudice. Dkt. No. 14. Plaintiff timely filed an

Amended Complaint alleging substantially the same two counts as in the original Complaint.

Dkt. No. 15. The amended complaint, like the original, fails to clarify whether Plaintiff's first

count seeks relief for racial discrimination, hostile work environment, or both. In an abundance

of caution, the Court addresses both theories. Defendant has moved to dismiss for failure to state

a claim. Dkt. No. 16. Defendant also seeks sanctions in the form of attorney's fees associated

with pressing the instant Motion alleging that the Plaintiff failed to comply with the Court's prior

order. Dkt. No. 17 at 2. Plaintiff did not file an opposition to the Motion.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must contain sufficient factual information to "state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss

pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2) which requires "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required,

Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that

the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a

complaint without resolving factual disputes, a district court "'must accept as true all of the

factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the

plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th

4

Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th

Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a

recovery is very remote and unlikely.' " *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974)).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint with prejudice for failure to

state a claim upon which relief can be granted. Defendant further moves for sanctions in the

form of attorneys' fees and costs incurred in filing the Motion and appearing in Court to argue it.

These considerations are addressed in turn.

**A.     Count I: Race Discrimination[1]**

A plaintiff is not required to plead facts that constitute a prima facie case in order to

survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15, 122 S.Ct.

992, 152 L.Ed.2d 1 (2002). However, "[f]actual allegations must be enough to raise a right to

relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th

Cir.2009). For this reason, the Court looks to the elements of a prima facie case but does not

require proof of the elements, only plausibility. Absent direct evidence, the elements of a prima

facie case of discrimination under Title VII are: (1) membership in a protected class; (2)

satisfactory job performance; (3) adverse employment action; and (4) different treatment from

---

[1] Plaintiff indicated at the hearing in this matter on May 19, 2017 that he was abandoning his hostile work environment claim in Count 1. [*See* Draft Hearing Tr. at 6:18-23.] The heading for Count I in the Amended Complaint similarly suggests abandonment of this cause of action. Plaintiff captioned the first count in the Complaint as "Race Discrimination Creating an Unlawful Hostile Work Environment in violation of Title VII . . . ." Dkt. No. 1 at 5. The Amended Complaint captions the same count as merely "Race Discrimination in Violation of Title VII . . . ." Dkt. No. 15 at 5. For these reasons, the Court dismisses any latent claim for hostile work environment.

5

similarly situated employees outside the protected class. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir.2004).

With respect to the original Complaint, the Court observed that Plaintiff had not advanced any affirmative factual allegations that similarly situated employees outside of the protected class were treated differently or that Plaintiff was performing satisfactorily at the time of termination in the Complaint.

With respect to similarly situated employees, Plaintiff added the following allegations in the Amended Complaint (additions are italicizied):

- Dkt. No. 15 ¶ 15: *White employees were not subject to the same mistreatment and false accusations that Plaintiff incurred.*

With respect to satisfactory job performance, Plaintiff has added the following allegations (additions are italicized):

- Dkt. No. 15 ¶ 23: On or about May 1, 2015, Principal O'Neill sent a letter to Plaintiff informing him that the he had received a "Does not Meet Job Requirements" overall performance rating on his 2014-2015 Evaluation *and as a result was being non-appointed for the following school year.*

- Dkt. No. 15 ¶ 24: *Prior to this incident, Plaintiff had always received excellent performance ratings from Defendant and had never before received a "Does Not Meet Job Requirements" rating.*

- Dkt. No. 15 ¶ 25: *Plaintiff's non-appointment* was in direct contravention to the School's guidelines which required that Defendant provide notice in writing to Plaintiff by March 27, 2015 if an employee receives a "Does Not Meet Job Requirements" rating . . . .

- Dkt. No. 15 ¶ 26: These remedies were not made available to Plaintiff, *and Defendant never explained to Plaintiff why the latter had received a "Does Not Meet Job Requirements" despite performing at the same satisfactory level as previous years.*

- Dkt. No. 15 ¶ 27: *Plaintiff avers that he received the "Does Not Meet Job Requirements" in retaliation to his pointing out the racial implications of the poster.*

Defendants contend that these new allegations do not sufficiently allege that Plaintiff was performing satisfactorily at the time he was dismissed or that he was treated differently than similarly situated employees outside of the protected class.

### 1. Similarly Situated Comparator

To begin, "Plaintiffs are not required as a matter of law to point to a similarly situated comparator in order to prevail on a discrimination claim." *Hurst v. D.C.*, No. 15-1410, 2017 WL 908208, at *4, n. 5 (4th Cir. Mar. 7, 2017) (per curiam) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)). However, where the plaintiff does offer a comparator, "the validity of [her] prima facie case depends upon whether that comparator is indeed similarly situated." *Taylor v. Millennium Corp.*, No. 1:15-CV-1046, 2016 WL 927185, at *6 (E.D. Va. Mar. 4, 2016) (O'Grady, J.) (quoting *Haywood v. Locke*, 387 Fed.Appx. 355, 359 (4th Cir. 2010)).

Plaintiff makes the general accusation that "white employees were not subject to the same mistreatment and false accusations . . . ." Dkt. No. 15 ¶ 5. To the extent Plaintiff seeks to establish the plausibility of discrimination by comparing himself to employees outside of the protected class, Plaintiff is required to do more than make a general accusation that he "was treated differently as a result of his race than whites. . . ." *Coleman*, 626 F.3d at 191. At a minimum, he must identify the similarly situated employee and "establish a plausible basis for believing [the employee was] actually similarly situated . . . ." *Id.*

While it is not necessary to plead a comparator in order to state a claim for discrimination, it appears in this case that Plaintiff seeks to base his discrimination claim on the presence of a comparator. In the hearing on May 19, 2017, Plaintiff submitted that a white male teacher, Jordan Ricks, who had accused Plaintiff of drug use, constituted an adequate

comparator. However, the Court observed in the hearing that Plaintiff had failed to allege a plausible inference that Ricks was similarly situated to Plaintiff. Any argument Plaintiff still seeks to make that Ricks is a comparator must fail because has not supplemented the Complaint to provide further information about Hick's comparable role. *See, e.g., Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (affirming the district court's dismissal for failure to state a claim and observing that the deficiency could have been addressed by "including facts demonstrating the similarities between [plaintiff's] workload and that of [the comparator] . . . .").

Plaintiff has supplemented the Amended Complaint to allege that he was treated differently from white employees generally. *See* Dkt. No. 15 at 3, ¶ 15. But this accusation is even more wanting than the claim which was found inadequate in *Coleman*. In *Coleman*, the plaintiff specifically identified a white comparator employee. *See id.* ("The complaint . . . specifically identifies Broccolina as a white person who was not disciplined despite having 'outside business involvements.'"). By contrast, the Amended Complaint does not focus on a specific similarly situated individual outside of the protected class who was treated differently.

For these reasons, Plaintiff has not plausibly alleged a similarly situated comparator.

*2. Satisfactory Performance*

Defendant also claims that the Amended Complaint does not allege facts making it plausible that Plaintiff was performing satisfactorily at the time of his firing.

In order to plausibly allege satisfactory performance Plaintiff must "provide[] facts to support his allegation that he had 'always met or exceeded the performance expectations of [his employer]." *Id.* A plaintiff's naked assertion that he performed above expectations is insufficient. *See Kikwebati v. Strayer Univ. Corp.*, 2014 WL 7692396, at *8 (E.D. Va. Oct. 21,

2014) (finding that "bare conclusions" that "Plaintiff had demonstrated superior performance" in his role were insufficient to survive a motion to dismiss). Plaintiff can satisfy the plausibility requirement by, for example, "referenc[ing] positive feedback or performance reviews that he had received from his [] supervisor since [Plaintiff] last suggested that he had performed satisfactorily." *Goode*, 807 F.3d at 626; *see also Kikwebati*, 2014 WL 7692396, at *8 (establishing the plausibility of satisfactory performance by detailing actual performance on reviews).

The Amended Complaint asserts that "Plaintiff had always received excellent performance ratings from Defendant and had never before received a 'Does Not Meet Job Requirements' rating." Dkt. No. 15 ¶ 24. Defendants assert that the foregoing allegation does not contain any facts suggestive of adequate performance at the time of non-renewal and that a statement of previous good performance ratings "does not equate to meeting an employer's legitimate expectations at the time of non-renewal." Dkt. No. 17 at 5. In support, Defendants cite to two cases in which the Court dismissed a claim for failure to show adequate work performance. *See id.* (citing *Kidd v. TA Operating, LLC*, 2010 WL 1039825, at *3 (E.D. Va. Mar. 18, 2010) (Hudson, J.), *aff'd* 398 Fed. App'x 901 (4th Cir. 2010); *Bogan v. Roomstore, Inc.*, 2010 WL 370306, at *2 (E.D. Va. Jan. 29, 2010) (Hudson, J.).

The cases cited by the Defendants do not substantially advance their argument. Neither cited case provides more than a conclusory finding of the absence of adequate work performance. By contrast, *Kikwebati* provides a much more thorough analysis of the adequate work performance requirement at the motion to dismiss phase. In *Kikwebati*, the Court observed that allegations that Plaintiff's " 'six-year tenure as Campus Dean of the Chesapeake Campus and nine years as a faculty member were very successful,' . . . refer[ences] to [plaintiff's] 'record

of success,' . . . ; and alleg[ations] that 'Plaintiff had demonstrated superior performance while

Campus Dean,' " were inadequate to survive a motion to dismiss for failure to state a claim.

*Kikwebati*, 2014 WL 7692396, at *7. Nevertheless, the court found that other allegations in the

complaint did satisfy the work performance prong, specifically:

> '[plaintiff] received 'Commendable' ratings on each of his audits as campus dean,' . . . ;
> in a November 2013 audit, the Academic Department at the Chesapeake campus passed
> the audit with a commendable rating, which Plaintiff's successor as Campus Dean
> attributed to Plaintiff, . . . ; in October 2013, Plaintiff's campus 'was rated 16 out of 100
> campuses nationwide, and the campus was even rated as high as 5th nationwide during
> Plaintiff's last year of employment," id. ¶ 15; and that 'four out of five full time faculty
> that Plaintiff managed had been previously selected Teacher of the Year for Strayer,
> including the Teacher of the Year for the period when Strayer terminated Plaintiff,' . . . ."

*Id.* at *8.

The Court of Appeals offered a similar analysis in *Goode*. The lower court in *Goode*

found that stating "in conclusory fashion, . . . that [plaintiff] 'has always met or exceeded the

performance expectations of [the employer].' . . . is insufficient to show that [the employer] was

satisfied with [plaintiff's] job performance at the time of his termination. *Goode v. Cent.*

*Virginia Legal Aid Soc.*, 2014 WL 3945870, at *5 (E.D. Va. Aug. 12, 2014). The Court of

Appeals affirmed this finding and observed that the deficiency could be remedied by

"referenc[ing] positive feedback or performance reviews that [plaintiff] had received from his []

supervisor since 2009—the year that, according to the district court, [plaintiff's] allegations last

suggested that he had performed satisfactorily." *Goode*, 807 F.3d at 626.

Plaintiff's claim that "[p]rior to this incident, Plaintiff had always received excellent

performance ratings from Defendant and had never before received a 'Does Not Meet Job

Requirements' rating[]", Dkt. No. 15 ¶ 24, is like the conclusory allegation of meeting or

exceeding performance expectations rejected in *Goode*. Contrast Plaintiff's assertions with the

numerous other objective indicia of satisfactory job performance besides the allegation that the

plaintiff received commendable reviews at all prior points which was found adequate in *Kikwebati*. *See Kikwebati*, 2014 WL 7692396, at *8 (noting positive attributions from plaintiff's successor and awards received by individuals and institutions under plaintiff's supervision). Plaintiff has offered the sole factual allegation that he never received a negative review. Because the Plaintiff has not pleaded more than the conclusory allegation that his work performance was satisfactorily, he has failed to plausibly allege this element of the claim.

## B.    Count II: Retaliatory Discharge

Defendant also moves to dismiss the retaliation count for failure to state a claim.

"An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). To state a claim for retaliation Plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Chapman v. Geithner*, 2012 WL 1533514, at *15 (E.D. Va. Apr. 30, 2012) *aff'd*, 507 Fed. App'x 299 (4th Cir. 2013).

The parties do not dispute that Plaintiff suffered an adverse employment action because he was not re-hired. However the parties disagree on the plausibility of the remaining two elements. In the Amended Complaint, "Plaintiff avers that he received the 'Does Not Meet Job Requirements' in retaliation to his pointing out the racial implications of the poster." Dkt. No. 15 at 5, ¶ 27. Otherwise, the allegations remain unchanged from the original Complaint: Plaintiff contends that his letter to Principal O'Neill, subsequently sent to the Superintendent and others was a protected action. The letter expressed discontent that the poster had been allowed to

remain in the teacher's lounge for several months and requested diversity training for school employees. Plaintiff's termination followed less than two months after. Plaintiff alleges that temporal proximity between the letter and the firing creates a plausible inference that the firing was motivated by the letter.

Defendant offers two grounds for dismissing the retaliation claim. First, Defendant submits that the letter does not amount to opposition activity because it actually praised Principal O'Neill for removing the poster. Defendant argues that "it is nonsensical to conclude that praising one's employer for an act of removing an allegedly offensive poster would then cause the employer to retaliate and not offer continued employment to the one offering praise." Dkt. No. 17 at 12. Even if the comment were offensive, Defendant submits that there is no causal link between the comment about the poster and the decision to not offer Plaintiff a new contract. *Id.*

The Fourth Circuit examines retaliation claims holistically through a "panoramic lens." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. "[T]he threshold for oppositional conduct is not onerous. *DeMasters*, 796 F.3d at 417. Thus, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (internal quotation marks and citations omitted).

Applying this lenient standard, the Court finds that Plaintiff has plausibly alleged that he engaged in oppositional activity by advising the Defendant that he was offended by the poster and suggesting that sensitivity training was appropriate for Defendant's employees.

Even though the conduct is oppositional, Plaintiff must also plead that the conduct is causally connected to his "Does Not Meet Job Requirements" rating in 2015 and subsequent non-appointment for the next school year. "A prima facie showing of causality requires either: (1) that the retaliation closely followed the protected activity, or (2) that the plaintiff put forth a sufficient explanation for the delay between the protected activity and the alleged retaliation." *Reardon v. Herring*, 201 F. Supp. 3d 782, 784 (E.D. Va. 2016). Plaintiff does not plead anything more than the conclusory allegation that "he received the 'Does not Meet Job Requirements" rating in retaliation to his pointing out the racial implications of the poster. Thus, Plaintiff rests entirely on the implicit allegation that the retaliation closely followed the protected activity.

"[M]ere temporal proximity between an employer's knowledge of protected activity and an adverse employment action only suffices to show causality if the events are 'very close' in time." *Hanson–Hodge v. Colvin*, No. 1:14-CV-744, 2015 WL 12516768, at *2 (E.D. Va. May 12, 2015) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272–73 (2001)). "For example, the Fourth Circuit has held that *absent other evidence of retaliation*, four months between a plaintiff's protected activity and the adverse action is insufficient to state a prima facie case of retaliation." *Id.* (collecting cases from Fourth Circuit) (emphasis original). On the other hand, in the context of reviewing (and reversing) an order granting a motion to dismiss, the Fourth Circuit has found that a "ten-week lapse of time sufficiently established a prima facie case of retaliation." *Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006) (per curiam); *see also Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015)

13

(finding termination just a month after complaints about perceived retaliation was sufficient to create a jury question regarding causation); *King v. Rumsfeld*, 328 F.3d 145, 151 & n. 5 (4th Cir.2003) (finding that a two-and-a-half month gap between protected activity and an adverse employment action was sufficiently narrow to establish the causation prong of the prima facie case solely on the basis of temporal proximity).

Plaintiff alleges that he was terminated less than two months after sending his letter to Principal O'Neill. *See* Dkt. No. 15 at 3-4, ¶¶ 17, 23. This places the opposition activity squarely within the band of time from which the Court can draw a plausible inference of causation. In addition, Plaintiff alleges that he was given a "Does Not Meet Job Requirements" rating, and on that basis not re-hired, in contravention of Defendant's policies. *See* Dkt. No. 15 at 4, ¶ 25-26. The fact that Plaintiff failed to articulate the reasons for Defendant's unsatisfactory performance, as required by Defendant's policies, creates a plausible inference that the performance rating was pretext for retaliating against Plaintiff. *See Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 951 (E.D. Va. 2015) (finding inconsistent justifications for termination supported prima facie case of causation notwithstanding lack of temporal proximity).

For these reasons, Plaintiff has plausibly alleged a claim of retaliation.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion as to Count I and **DENIES** the Motion as to Count II. Further, the Court **DENIES** the Motion for Sanctions because the filing of the Amended Complaint was appropriate.

An appropriate order shall issue.

August 18 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge

14